UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,                      Case No. 1:11-cv-00580

       v.                                Hon. Gordon J. Quist

RONALD ABERNATHY, ARTHUR
WEISS, and SOVEREIGN
INTERNATIONAL GROUP, LLC,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

The District Court entered a default judgment as to liability against defendants Ronald Abernathy, Arthur Weiss and Sovereign International Group, LLC ("Defendants") and referred the matter to this Court for an evidentiary hearing and submission of a report and recommendation regarding the proper scope of injunctive and monetary relief. (Dkt. 65.) The Court held an evidentiary hearing on November 5, 2012. (Dkt. 67.) It is recommended that the District Court: (i) issue a permanent injunction against each defendant in the form set forth in this report and recommendation; (ii) issue an order holding Defendants jointly and severally liable for disgorgement in the amount of $539,563 plus prejudgment interest in the amount of $66,133; and (iii) impose a civil penalty in the amount of $250,000 against each of the Defendants.

### BACKGROUND

Plaintiff, the United States Securities and Exchange Commission ("Commission") filed a Complaint against Defendants on June 3, 2011. (Dkt. 1.) Defendants each entered a general

1

appearance and the Court has jurisdiction over Defendants. (Dkts. 16, 20 & 30.) The Commission filed a First Amended Complaint against Defendants on January 23, 2012. (Dkt. 35.)

On July 3, 2012, this Court issued a Report and Recommendation, recommending that a default judgment be entered against Defendants as to liability and that the matter be referred to this Court to conduct an evidentiary hearing regarding injunctive and monetary relief. (Dkt. 60.) On October 2, 2012, the District Court adopted that Report and Recommendation and, pursuant to Rules 16(f) and 37(b)(2)(A) of the Federal Rules of Civil Procedure, entered a default judgment against Defendants as to liability. (Dkt. 65.)

Pursuant to the default judgment, the allegations of the Commission's First Amended Complaint are deemed admitted as a matter of law, *U.S. v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007) ("[U]pon the entry of a default judgment, [the defendant's] liability was deemed to be established as a matter of law and the factual allegations of the complaint were no longer open to dispute."), and are adopted as the findings of the Court. Accordingly:

    (i)    Defendants are liable for violations of Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], as alleged in Counts I and III of the First Amended Complaint;

    (ii)    Abernathy and Weiss are liable for aiding and abetting Sovereign International Group, LLC's ("Sovereign") violations of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule

>>10b-5 promulgated thereunder, as alleged in Counts II and IV of the First Amended Complaint; and
>
> (iii) Abernathy and Weiss are liable as control persons and, therefore, pursuant to Section 20(a) of the Exchange Act, they are jointly and severally liable with and to the same extent as Sovereign, as alleged in Count V of the First Amended Complaint.

In its October 2, 2012 Order, the District Court referred the matter to this Court for an evidentiary hearing and submission of a Report and Recommendation regarding the proper scope of injunctive and monetary relief. (Dkt. 65.) On November 5, 2012, this Court held an evidentiary hearing. (Dkt. 67.) Plaintiff Commission appeared through counsel. No defendant appeared at the evidentiary hearing, either in person or through counsel. Nor did any defendant contact the Court to request that the hearing being rescheduled.

At the evidentiary hearing, the Commission presented testimony from Pesach Glaser, the Commission's accountant assigned to this matter. Among other matters described below, Mr. Glaser testified that (i) Defendants received $560,425 in investor funds; (ii) they did not invest any of that money; (iii) they repaid only $20,862 to investors; and (iv) they used other investors' funds to make those limited repayments (*i.e.*, conducted a Ponzi scheme). The Court admitted into evidence the exhibits offered by the Commission, including exhibits summarizing the sources and uses of funds held in Defendants' bank accounts, the Ponzi-like nature of the repayments to investors and Mr. Glaser's calculations of Defendants' net gain from this fraudulent scheme and the interest owed on that amount through October 31, 2012. (Dkt. 68.) The Commission's evidence is detailed and persuasive. Because Defendants presented no

evidence, it is also undisputed. Accordingly, the Court adopts the Commission's evidence—including Mr. Glaser's calculations—as the findings of the Court.

## ANALYSIS

In its First Amended Complaint, the Commission requests permanent injunctive relief, an order holding Defendants jointly and severally liable for disgorgement plus prejudgment interest and the imposition of civil penalties. This Court will address each of these forms of requested relief.

Permanent Injunctive Relief

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] allow the Commission to obtain permanent injunctive relief. To obtain such relief, the Commission must establish that there is a substantial likelihood of future violations. *SEC v. Washington County Utility Dist.*, 676 F.2d 218, 227 (6th Cir. 1982). In predicting the likelihood of future violations, a court evaluates the totality of the circumstances, *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2nd Cir. 1977), including whether the Commission has established past violations of the securities laws. *Washington County*, 676 F.2d at 227 ("Proof of past violations of the securities laws serves as a basis for an inference that future violations may occur.").

In actions brought by the Commission, courts have issued permanent injunctions based on a finding of past violations established through a default judgment. *E.g.*, *SEC v. Small Cap Research Group, Inc.*, No. 05-15638, 226 Fed. Appx. 656, 658, 2007 WL 579809 (9th Cir. Feb. 13, 2007)*; SEC v. New Futures Trading Int'l Corp.*, No. 11-cv-532-JL, 2012 WL 1378558, at *1 (D.N.H. Apr. 20, 2012)*; SEC v. Bass*, No. 1:10-CV-00606, 2011 WL 4344001, at *3-4 (N.D.N.Y. Sept. 14, 2011); *SEC v. Syndicated Food Services Int'l, Inc.*, No. 04-CV-1303, 2010

WL 4668777, at *1-2 (E.D.N.Y. Nov. 9, 2010); *SEC v. Locke Capital Mgmt., Inc.*, 726 F. Supp. 2d 105, 109 (D.R.I. 2010)*; SEC v. Capital Holdings, LLC*, No. 1:03-cv-00923-REB-CBS, 2008 WL 5381461, at *1 (D. Colo. Dec. 19, 2008).  As noted above, the allegations of the First Amended Complaint—which are deemed admitted by virtue of the default—establish that Defendants engaged in multiple violations of the securities laws.  These established violations serve as a basis for granting permanent injunctive relief.

In assessing the need for injunctive relief, courts also consider factors such as the egregiousness of the violations, the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; the sincerity of his assurances against future violations; and the defendant's age and health.  *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984); *SEC v. Free*, No. 06-14891, 2011 WL 5143201, at *2 (E.D. Mich. Oct. 31, 2011).  In this case, all of these factors weigh in favor of granting the Commission's request for permanent injunctive relief.

First, Defendants' violations of the securities laws were egregious. For years, Defendants devised and directed a fraudulent Ponzi scheme, through which they obtained over half a million dollars from 17 investors.  (First Am. Compl. (Dkt. 35.) at ¶¶ 1-3, 15, 29, 32; Glaser Hr'g Test.)  They made blatantly false representations to those investors.  Defendants told investors they would make money from buying and selling securities.  (First Am. Compl. (Dkt. 35.) at ¶¶ 1 & 15 and Ex. A to the First Am. Compl.)  They did not use investor funds to buy or sell any securities.  (*Id*. at ¶¶ 1 & 29; Glaser Hr'g Test.; Hr'g Exs. 1-4)  In fact, they did not invest a single dime of investor funds.  (*Id*.)  Instead, Abernathy and Weiss misappropriated almost all of the money obtained through their scheme.  (*Id*.)

5

Defendants also lied to investors to prevent them from finding out the truth about the fraudulent scheme. They issued an update to the investors falsely stating that they had invested the investor funds in a trading program. (First Am. Compl. (Dkt. 35.) at ¶¶ 39-41; Hr'g Ex. 8.) The also made repeated false statements regarding the structure and performance of that non-existent trading program: "[t]he returns on the program we are involved with are proving to be quite favorable," "[t]he program we're involved with credits us monthly" and "the program is set up like a short term CD which allows periodic withdrawals every 90 days." (*Id.*) Defendants falsely told investors they each had earned 10% so far on their investments, (First Am. Compl. (Dkt. 35.) at ¶¶ 46-48; Hr'g Ex. 9), Sovereign had $50 million in corporate assets, (First Am. Compl. (Dkt. 35.) at ¶¶ 49-53; Hr'g Ex. 8), the investments were safe because they were backed by "hard assets" that could be converted to cash to pay back investors, (First Am. Compl. (Dkt. 35.) at ¶ 54), that investors could expect to earn 1.5% compounded weekly, (*id.* at ¶¶ 55-57; Hr'g Ex. 8), and that Defendants were due a $15 to $20 million payment from a business deal and the only thing delaying that payment was the U.S. Department of Homeland Security which was following its standard procedure to make sure that the money had no ties to terrorist organizations or drug trafficking, (First Am. Compl. (Dkt. 35.) at ¶ 58.)

Defendants acted with a high degree of scienter when they perpetrated their fraud. As noted in the preceding paragraphs, despite their promises to investors that they would use investor funds to buy and sell investment grade securities, they never invested any of that money and they knowingly lied to investors to prevent them from learning the truth about the fraudulent scheme. Also, Defendants directed a Ponzi scheme in which they made limited repayments to investors using other investors' funds. (Glaser Hr'g Test.; Hr'g Ex. 4.) Defendants never told investors that their funds would be used to make repayments to other investors. (First Am.

6

Compl. (Dkt. 35.) at ¶¶ 31-34). Ponzi schemes, by their very nature, require a high degree of scienter. *E.g.*, *SEC v. C.J.'s Financial*, No. 10-13083, 2012 WL 3600239, at *8 (E.D. Mich. July 30, 2012) (permanent injunction issued against defendant who perpetrated Ponzi scheme and "blatantly misused hundreds of thousands of dollars of [investor] funds for personal benefit."); *see also SEC v. Watermark Fin. Servs. Grp., Inc.*, No. 08-CV-361S, 2012 WL 501450, at *8 (W.D.N.Y. Feb. 14, 2012).

The recurrent nature of Defendants' violations also weighs in favor of permanent injunctive relief. Defendants defrauded 17 investors over a period of at least two years. During that time they repeatedly lied to those investors. The frequency of the defendants' violations strengthens the inference that they will commit future violations of the securities laws. *Washington County,* 676 F.2d at 227. *See also CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ("When the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct.")

The Court also notes that this is not the first time Abernathy and Weiss have been involved in securities frauds. Including the current fraudulent scheme, Weiss has been involved in at least four securities frauds in the last ten years. (First Am. Compl. (Dkt. 35.) at ¶¶ 11-14.) Abernathy has been involved in at least three of those same frauds. (*Id.*) In one of those prior frauds involving an entity named The Omicron Group, LLC ("Omicron"), Abernathy received approximately $25,000 in investor funds and Weiss received approximately $38,000 in investor funds. (Glaser Hr'g Test.) With respect to the Omicron fraud, the State of California barred Abernathy and Weiss from engaging in fraudulent securities sales in that state. (First Am. Compl. (Dkt. 35.) at ¶ 14; Hr'g Ex. 7.) After the Omicron scheme fell apart, they continued to commit securities fraud in California and other states. (First Am. Compl. (Dkt. 35.) at ¶¶ 14-15

and Exs. B & C to First Am. Compl.) *SEC v. Lowrance*, No. 11-CV-03451-EJD, 2012 WL 2599127, at *6 (N.D. Cal. July 5, 2012) (permanent injunction issued by a federal court warranted where defendant ignored state injunctive order).

Defendants have never acknowledged the wrongful nature of their conduct, nor have they provided any assurances against future violations. The absence of such acknowledgments and assurances weighs in favor of a permanent injunction.

Finally, the Court notes that Abernathy—who is in his mid-60s—and Weiss—who is in his early 60s—still have many years left to engage in similar conduct. Given this fraud, their involvement in other fraudulent schemes and all the factors discussed above, the Court concludes there is a substantial likelihood Defendants will engage in future violations of the securities laws. Accordingly, the Court recommends that the District Court issue a permanent injunction in the form set forth at the end of this report and recommendation.

 Disgorgement and Prejudgment Interest

It is well established that the securities laws confer general equity powers upon the district courts. *See SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307-08 (2d Cir.), *cert. denied*, 404 U.S. 1005 (1971). One such remedy is an order of disgorgement against a defendant. *E.g.*, *SEC v. Midwest Investments, Inc.*, 85 F.3d 630 (Table) 1996 WL 229783, at *7 (6th Cir. 1996). In fact, the deterrent effect of Commission enforcement actions would be greatly undermined if securities law violators were not required to disgorge their ill-gotten gains. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972). The Commission is only required to show that the amount of disgorgement is a reasonable approximation of profits causally connected to the violation. *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 15 (D.D.C. 1998).

Courts may also award prejudgment interest. *See SEC v. Falbo*, 14 F. Supp. 2d 508, 528 (S.D.N.Y. 1998). The Court concludes that prejudgment interest is warranted in this case to prevent Defendants from profiting from the use of the money they unlawfully obtained from investors. *SEC v. Brethen*, No. C-3-90-071, 1992 WL 420867, at *23 (S.D. Ohio Oct. 15, 1992). Courts have approved the use of the IRS underpayment rate to calculate prejudgment interest in connection with disgorgement in cases brought by the Commission. *SEC v. Tecumseh Holdings Corp.*, No. 03 Civ. 5490 (SAS), 2011 WL 2076466, at *2 (S.D.N.Y. May 24, 2011) ("In determining pre-judgment interest, it is appropriate to use the IRS underpayment rate [26 U.S.C. § 6621(a)(2)], and the interest should be compounded quarterly [17 C.F.R. § 201.600(b)] and calculated 'for the entire period from the time of defendants' unlawful gains to the entry of judgment.'").

In its First Amended Complaint, the Commission seeks an order holding Defendants jointly and severally liable for disgorgement and prejudgment interest. (First Am. Compl. (Dkt. 35.) at ¶ 96.) Section 20(a) of the Securities Act [15 U.S.C. § 78t(a)] expressly provides that control persons "shall also be liable jointly and severally with and to the same extent as such controlled person." The Court finds that Abernathy and Weiss each (i) controlled the day-to-day affairs of Sovereign; (ii) possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of Sovereign; (iii) was involved in the formulation and execution of the improper actions, misrepresentations and omissions described in the First Amended Complaint, including, but not limited to, the creation and issuance to investors of the promissory notes, investors updates and updated investor account information; and (iv) was involved in the control and misuse of investor proceeds. (First Am. Compl. (Dkt. 35.) at ¶¶ 27, 40, 47, 64, 93.) Count V of the First Amended Complaint—which has been deemed admitted—establishes that Abernathy and Weiss are control persons of Sovereign and, therefore, they should

9

be held jointly and severally liable to the same extent as the corporate defendant. (*Id*. at ¶¶ 91-96.) *See also SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991) (joint and several liability is appropriate for primary violators where, as here, the actions of individual defendants are "inextricably interwoven" with that of their companies.)

At the evidentiary hearing, Mr. Glaser testified that Defendants received $560,425 from investors and repaid to investors $20,862, resulting in net ill-gotten gains of $539,563. (Glaser Hr'g Test.; Hr'g Ex. 5.) Applying the interest rate used by the Internal Revenue Service for computing interest on the underpayment of taxes and compounding that interest quarterly, Mr. Glaser calculated $66,133 of interest on that amount through October 31, 2012. (*Id*.) Based on this undisputed evidence, the Court recommends that the District Court issue an order holding Defendants jointly and severally liable for disgorgement of $539,563 plus prejudgment interest of $66,133.

Civil Penalties

Pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], courts are authorized to impose monetary penalties for securities law violations. These civil penalty provisions are designed to serve as a deterrent against future misconduct. *SEC v. Conaway*, 697 F. Supp. 2d 733, 747 (E.D. Mich. 2010). In this case, the Commission requests the imposition of "third tier" civil penalties against Defendants, which require a showing that Defendants engaged in "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that their violations "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. 15 U.S.C. §§ 77t(d)(2)(C) & 78u(d)(3)(B)(iii). The standard for

10

determining a penalty is based on the Court's discretion in light of the facts and circumstances of each case. 15 U.S.C. §§ 77t(d)(2) & 78u(d)(3)(B).

In determining whether to impose a civil penalty, courts consider: (i) the egregiousness of defendant's conduct; (ii) the degree of defendant's scienter; (iii) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (iv) whether the defendant's conduct was isolated or recurrent; and (v) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.  *SEC v. Integrity Fin. AZ, LLC*, No. 1:10 CV 782, 2012 WL 176228, at *8 (N.D. Ohio Jan. 20, 2012).  All of these factors weigh in favor of the imposition of civil penalties against Defendants.  The first four factors are discussed in detail above and do not need to be repeated here.

Regarding the fifth factor, the Defendants did not present any evidence of their current and future financial condition at the evidentiary hearing.  The Court notes that during their fraud, when it suited their purposes to be wealthy, Defendants Weiss and Abernathy claimed to have access to millions of dollars and certain "hard assets" that could be converted to cash to pay back investors.  (First Am. Compl. (Dkt. 35.) at ¶¶ 35-37, 49, 54-55, 58, 67; Hr'g Ex. 8.)  During this litigation, when it is in their interest to be impecunious, Defendants claim to have no assets at all.  However, a defendant's self-serving claim of financial hardship does not establish that he is unable to pay a civil penalty and is insufficient to overcome the imposition of an appropriate penalty.  *Integrity Fin.*, 2012 WL 176228, at *10-11.  Moreover, because Defendants did not appear at the evidentiary hearing, the Court was not able to assess their credibility, nor was the Commission given the opportunity to cross-examine Defendants on this topic.  Accordingly, the Court concludes that Defendants' previous statements regarding their financial conditions are

entitled to no weight and that this factor is insufficient to overcome the imposition of a civil penalty.

Applying the relevant factors, the Court concludes that civil penalties should be imposed because Defendants engaged in fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement and their violations directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. Accordingly, the Court recommends that the District Court impose a $250,000 civil penalty against each Defendant.[1]

## CONCLUSION

For the foregoing reasons, the Court recommends that the District Court issue an order granting the following relief:

1. Defendants Ronald Abernathy, Arthur Weiss and Sovereign International Group, LLC are jointly and severally liable for disgorgement in the amount of $539,563, and prejudgment interest in the amount of $66,133.

2. Defendants Ronald Abernathy, Arthur Weiss and Sovereign International Group, LLC are liable for civil penalties in the amount of $250,000 each.

3. Defendants Ronald Abernathy, Arthur Weiss and Sovereign International Group, LLC and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's final judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any

---

[1] For third-tier violations occurring after February 2, 2005, the maximum amount per violation is $130,000 or the gross amount of pecuniary gain. *Integrity Fin.*, 2012 WL 176228, at *8. For violations occurring after March 3, 2009, the maximum amount per violation is $150,000 or the gross amount of pecuniary gain. *Id*. In this case, Defendants' violations began in December 2008, (Glaser Hr'g Test.; *see also* First Am. Comp. at ¶ 1), and continued for several years, (*see*, *e.g.*, Hr'g Ex. 5.) The civil penalty amounts requested by the Commission are less than the gross amount of Defendants' pecuniary gain.

means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

   (a) to employ any device, scheme, or artifice to defraud;

   (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

4. Defendants Ronald Abernathy, Arthur Weiss and Sovereign International Group, LLC and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's final judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

   (a) to employ any device, scheme, or artifice to defraud;

   (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

   (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

      5.      The Court also recommends that the District Court retain jurisdiction of this matter for the purposes of enforcing the terms of the judgment.

      6.      A proposed final judgment is attached as Exhibit A.

Dated: November 30, 2012

                                          /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          U.S. MAGISTRATE JUDGE